By the Court.
On August 13, 1896, the board of administration of the city of Cincinnati passed resolutions consolidating and extending various lines of the street railway system of that city. This grant was accepted by the street railway com *298 pany. One of the routes involved and provided for in the resolutions was known as the Seventh street route, passing over what is known as the Liberty street viaduct. Prior to 1896 horse cars had been used over this route and viaduct.
Section 18 of the terms and conditions of the grant provided as follows: “Whenever the City of Cincinnati and the County of Hamilton, or either, through its authorized officers, shall desire to reinforce the Liberty Street viaduct, situated on Liberty street between Garrard and State avenues, so that it will be safe for the operation of heavy vehicular travel or electric cars over the entire structure, the said The Cincinnati Street Railway Company shall be required to pay $7,000 towards defraying the expenses thereof.”
On March 31, 1903, by act of the city and street railway company, the portion of the Seventh street route passing over the viaduct was abandoned, and shortly thereafter the street car tracks thereon were removed and never thereafter used by the street railway company. About the year 1907 the city reconstructed Liberty street viaduct, making no provisions for street railway tracks thereon, nor for safeguarding the. structure for the operation of electric cars. Thereafter it brought suit for the sum of $7,000, the sum named in Section 18, above quoted. The legal question involved, to-wit, the construction of said Section 18, was presented in various forms by counsel for the street railway company. Both of the lower courts decided in favor of the city, whereupon, on order of certification, error is prosecuted to this court.
*299 The claim of the plaintiffs in error is that Section 18 provides only for a conditional obligation of payment upon the part of the street railway company, which is not to be fulfilled until the viaduct is reinforced so as to be safe for the operation of electric cars over the entire structure. The city contends that under the terms of the grant the street railway company is liable when the city has reinforced the viaduct so as to be safe for the “operation of heavy vehicular travel.”
An inspection of the record discloses that the resolutions granting the franchise comprise about thirty pages of the printed record. The grant contained many conditions, among others stipulations for relaying certain city sidewalks, repaving street intersections, and, in two instances, for the payment of stipulated pecuniary amounts as a partial consideration for the grant. The payment of the $7,000 named was part of the consideration for the entire grant, but conditional upon the determination of the city to reinforce the viaduct either for heavy vehicular travel or for electric cars.
We are unable to see any reason for the construction of this grant. The word “or” therein, as found in the phrase “heavy vehicular travel or electric cars,” is used clearly in the disjunctive sense. While this word is frequently construed to read “and,” where the natural and documentary sense requires such a construction, we are nevertheless clearly of the opinion that in this case it cannot be thus utilized, for the reason that by so doing it would not only alter vital conditions of the contract but would nullify the purpose of the city evi *300 dent by its incorporation in the resolutions. When the grant was made the city no doubt had in contemplation the fact that there might be no franchise over or user of the Liberty street viaduct by the operation of electric cars. In fact such proved to be the case, for the record discloses that in 1903 that part of the line was abandoned. Accordingly this provision may have been inserted in the grant in order to meet such a contingency, and to provide that in such event the obligation of payment should rest upon the street railway company in case the viaduct was reconstructed so as to make it safe for vehicular travel only. The terms contained in Section 18 we,re for the benefit of the city, which reserved the right to determine whether it should, and in what manner it might, reinforce the Liberty street viaduct; and, therefore, if any ambiguity did arise in the construction of that section, the construction should be resolved in favor of the city.

Judgment affirmed.

Wanamaker, Newman, Jones and Matthias, JJ., concur.
Nichols, C. J., and Donahue, J., dissent.